■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JAN CHERTOK and EDUARD GLADYSHEV, Respondents. [758 NYS2d 77] —Appeal by the People (1) from an order of the Supreme Court, Kings County (Dowling, J.), dated October 22, 2001, which granted those branches of the defendants' respective omnibus motions which were to suppress physical evidence, and (2), as limited by their brief, from so much of an order of the same court, dated December 18, 2001, as, upon granting the People's motion for leave to reargue, adhered to the original determination. Justice Ritter has been substituted for the late Justice O'Brien (see 22 NYCRR 670.1 [c]).

Ordered that the appeal from the order dated October 22, 2001, is dismissed, as that order was superseded by the order dated December 18, 2001, made upon reargument; and it is further,

Ordered that the order dated December 18, 2001, is reversed insofar as appealed from, on the law, the order dated October 22, 2001, is vacated, those branches of the defendants' respective omnibus motions which were to suppress physical evidence are denied, and the matter is remitted to the Supreme Court, Kings County, for further proceedings.

At approximately 3:15 P.M. on May 9, 2001, Sergeant James Hansen of the 61st precinct anticrime unit, was informed of a possible shoot-out which was to take place at 3:30 P.M. at the parking lot of Windjammer Motel in the Sheepshead Bay section of Brooklyn, between occupants of a black Mercedes and a black Lincoln Town Car. This information was received in a 911 emergency call, in which a female caller reported that her sister, brother-in-law, and employer, all of whom she named, were going to be involved in an altercation at the motel. She noted that the brother-in-law and the employer both had prior criminal records. The caller stressed that it was urgent that the police respond immediately to that location.

At approximately 3:20 P.M., the police arrived at the motel and, after driving through the parking lot, observed only a black Mercedes. The four responding plain-clothes officers

exited their unmarked cars, identified themselves, approached the vehicle without guns drawn, and requested that the occupants, the defendants, exit the Mercedes. The defendants complied and were frisked by the officers. No contraband was recovered as a result of the frisk. However, after the unrestrained defendants were removed to the rear of the Mercedes, one of the officers looked in the window and observed the butt of a gun protruding from under the front seat. He recovered the weapon. The Supreme Court granted those branches of the defendants' respective omnibus motions which were to suppress the gun, finding the police conduct to be illegal. We reverse.

The defendants' vehicle was stationary in the motel parking lot (*see People v Harrison,* 57 NY2d 470 [1982]). The information provided in the 911 call gave the police the right to exercise their common-law right of inquiry (*see People v Crea,* 126 AD2d 556, 559-560 [1987]). Moreover, given the nature of the information, a warning of a possible armed confrontation provided by a frantic caller who, while unidentified, was nevertheless obviously concerned about the well-being of endangered relatives and her employer, the removal of the defendants from the Mercedes was reasonable under the circumstances (*see People v Robinson,* 74 NY2d 773 [1989], *cert denied* 493 US 966 [1989]; *People v Finlayson,* 76 AD2d 670, 679-680 [1980], *lv denied* 51 NY2d 1011 [1980], *cert denied* 450 US 931 [1981]). The gun, observed in plain view in the vacant car, is thus admissible (see *Matter of Michael R.,* 267 AD2d 389 [1999]; *People v McKane,* 267 AD2d 253 [1999]). Ritter, J.P., S. Miller, Friedmann and Cozier, JJ., concur.